FERRITTO et al., Appellants,

v.

ALEJANDRO;  Ohio National Life Insurance Company et al., Appellees.

[Cite as *Ferritto v. Alejandro* (2000), 139 Ohio App.3d 363.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19682.

Decided Oct. 11, 2000.

*David P. Bertsch,* for appellants.

*Scott Salsbury* and *Alisa Labut Wright,* for appellee Ohio National Life Insurance Company.

*Marjorie Crowder Briggs,* for appellee Guardian Life Insurance Company of America.

---

BATCHELDER, Presiding Judge.

Appellants, John E. Ferritto and Marcia Ferritto, his wife, appeal the decision of the Summit County Court of Common Pleas, granting partial summary judgment against them on their *respondeat superior* and negligent hiring claims against Ohio National Life Insurance Company.[1] We reverse.

## I

Mr. and Mrs. Ferritto first met Wilfred Alejandro, appellee, after seeking investment advice from persons at their bank. In 1986, Alejandro was introduced as someone who they might wish to receive investment advice through and then place investments with. After meeting with Alejandro, the Ferrittos placed numerous investments with him and purchased several life insurance policies through him. Alejandro was a general insurance agent, representing several

---

1. Appellants also seek review of the trial court's entry of summary judgment against them on their agency claim. However, as we conclude that we lack jurisdiction over that issue, we do not reach the merits of that assignment of error.

insurance companies, including Ohio National Life Insurance Company, Ohio National Life Assurance Corporation, and O.N. Equity Sales Company (also known as Ohio National Equity Sales Company), appellees (hereinafter collectively referred to as "Ohio National"). Among the investments the Ferrittos placed with Alejandro were those which are the subject of the instant appeal: (1) a bond investment, placed in 1990; (2) a short-term investment, placed in 1989; and (3) the purchase of an annuity, placed in 1986.[2]

Alejandro purchased investments for less than the amount of funds that the Ferrittos had given him to purchase the investments and pocketed the remaining funds. Periodically, the Ferrittos received statements from Ohio National concerning their investments and stating the amount of money invested. The Ferrittos noted a discrepancy in the statements and, as Ohio National instructed, addressed those questions with their Ohio National Agent, Alejandro. Alejandro had ready explanations for the discrepancies—namely that the missing funds were in a holding account earning interest and waiting for the proper moment to invest. The Ferrittos apparently trusted Alejandro and accepted his explanations. The Ferrittos state that they viewed Alejandro as trustworthy due to the high status he was afforded by the insurance carriers that he represented. Namely, the Ferrittos testified that the walls of his office were replete with awards and commendations: even Ohio National afforded him the title "Ohio National Builder General Agent."

In 1993, the Ferrittos, apparently growing ever more suspicious of the status of the missing funds, contacted Ohio National, which began an investigation. The investigation revealed that rather than maintaining a holding fund for that portion of the Ferrittos' money which had not been invested as promised, Alejandro had commingled the investment money with his own personal funds and then spent the funds as if they were his own. On June 24, 1994, the Ferrittos initiated the instant action against, *inter alia*, Ohio National in the Summit County Court of Common Pleas.

The Ferrittos alleged, among other claims, breach of contract, negligent hiring, negligent supervision, and fraud. Further, the Ferrittos averred that, due to the representations of Ohio National and the other defendant insurance companies of which Alejandro was an agent, Alejandro possessed apparent authority to engage in transactions which did not involve their products—namely at issue here, an investment in a car wash. Upon various motions for summary judgment, the trial court granted summary judgment as to some of the claims and parties to the

---

**2.** Although there is some discrepancy as to the dates of these purchases, we will use the dates which the trial court found to be correct in its judgment entry, as this discrepancy was not raised and is not dispositive of our analysis of the issues presented herein.

action but did not find that there was no just reason to delay an appeal pursuant to Civ.R. 54(B). In the third round. of summary judgment motions and motions to reconsider the denial of summary judgment, the trial court included no just reason for delay language in its June 18, 1999 partial grant of summary judgment in favor of Ohio National. This appeal followed.

Upon motion to dismiss the appeal for lack of jurisdiction due to the absence of a final appealable order, this court, in an entry journalized February 15, 2000, concluded that a final, appealable order existed only as to the summary judgment entered against the Ferrittos on their claims against Ohio National for *respondeat superior* and negligent hire. Specifically, the trial court granted summary judgment as to those claims regarding the three investments enumerated above.

## II

The Ferrittos assert three assignments of error. We will discuss each in turn, consolidating their first two assignments of error to facilitate review.

### A

### First Assignment of Error

"The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing many of the claims against Guardian and Ohio National as being time barred under the absolute four year limitations period of R.C. 1707.43."

### Second Assignment of Error

"The trial court committed prejudicial error as a matter of law in granting summary judgment in favor of Guardian and Ohio National dismissing claims of negligence as being time barred under R.C. 2305.09(D) without regard to when plaintiffs knew or should have known of their injury." .

The Ferrittos aver that the trial court erred in applying the four-year statute of repose in R.C. 1707.43 as R.C. Chapter 1707 is inapplicable to the Ferrittos' common-law fraud claim.[3] We agree.

---

**3.** The Ferrittos also aver that due to the Ohio Supreme Court's holding in *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 639 N.E.2d 425, that "the General Assembly is constitutionally precluded from depriving a claimant of a right to a remedy 'before a claimant knew or should have known of her injury,'" *Id.* at 466, 639 N.E.2d at 430, quoting *Burgess v. Eli Lilly & Co.* (1993), 66 Ohio St.3d 59, 61, 609 N.E.2d 140, 141–142 (which was reiterated verbatim in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* [1999], 86 Ohio St.3d 451, 476, 715 N.E.2d 1062, 1085–1086), this court must find the four-year statute of limitations in R.C. 1707.43 similarly unconstitutional. However, we do not reach this issue, as we find R.C. 1707.43 inapplicable.

Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Appellate review of a lower court's entry of summary judgment is *de novo*, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275. Moreover, questions of law are reviewed *de novo*. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 602, 611 N.E.2d 955, 962–963. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. *Id.* Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.* The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791, 793–794.

In determining what statute of limitations is applicable to an action, a court must be guided by the principle that "[t]he limitation is imposed on the cause of action and the form in which the action is brought is immaterial." *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 44 O.O. 72, 97 N.E.2d 549, paragraph two of the syllabus. Accordingly, where a suit is brought to recover the purchase price for unlawfully sold securities or other recovery arising out of R.C. Chapter 1707, the applicable statute of limitations is found in R.C. 1707.43. In pertinent part, R.C. 1707.43 reads:

"No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period."

However, where a cause of action is brought on a claim of common-law fraud, the statute of limitations set forth in R.C. 2305.09 is applicable. In pertinent part R.C. 2305.09 provides "[a]n action * * * shall be brought within four years after the cause thereof accrued * * * [f]or relief on the ground of fraud * * * [and] shall not accrue * * * until the fraud is discovered."

In the case *sub judice*, the Ferrittos' complaint stated a cause of action for common-law fraud rather than a claim for redress under R.C. Chapter 1707.[4] In their complaint, the Ferrittos do not seek to recover the purchase price of securities or damages for a violation of R.C. Chapter 1707; rather they seek damages for the defendant's false statement that securities were purchased and upon which they relied. Apparently, securities were tangentially related to Alejandro's fraudulent conduct, as he promised to purchase securities with the money the Ferrittos invested with him. However, the statute of limitations in R.C. 1707.43 applies only if a violation of R.C. Chapter 1707 has occurred. The analysis of the Sixth Circuit Court of Appeals is instructive on this point:

"[W]e do not agree that the two year limitation period in § 1707.43 was intended to apply to *all* cases of securities law fraud, including those based solely upon the common law of fraud. * * * It applies to cases where the plaintiff claims his recovery is 'based upon' or 'aris[es] out of' a violation of the blue sky provisions[.]" (Emphasis original.) *Nickels v. Koehler Mgt. Corp.* (C.A.6, 1976), 541 F.2d 611, 616, overruled on other grounds *Ockerman v. May Zima Co.* (C.A.6, 1994), 27 F.3d 1151 (discussing the applicable statute of limitation to a Rule 10b–5 claim under federal securities law).

Moreover, common-law fraud differs from R.C. 1707.44 in that common-law fraud has the additional element of reliance by the purchaser, where a claim under R.C. 1707.44 does not mandate such reliance. *Nickels*, 541 F.2d at 616. Upon review of R.C. Chapter 1707, R.C. 1707.44 is the only section which might, arguably, apply to the Ferrittos' claims. In R.C. 1707.44(B), R.C. Chapter 1707 prohibits one from "knowingly mak[ing] or caus[ing] to be made any false representation concerning a material and relevant fac[t] in any oral statement * * * [for the purpose of] [s]elling any securities in this state."

---

4. We note that R.C. 1707.01(B) provides that R.C. 1707.01 to 1707.45 do "not apply to bond investment companies[.]" As this issue was not briefed on appeal it is unclear if the bond investment in 1990 was covered by Ohio securities law. Moreover, although R.C. 1308.02(B) did not go into effect until after this cause was filed, we note that it provides that the term security "does not include an insurance policy or endowment policy or annuity contract issued by an insurance company." See, also, *State v. George* (1975), 50 Ohio App.2d 297, 4 O.O.3d 259, 362 N.E.2d 1223. As this issue was also not raised, we will not address whether the annuity investment was a security. Moreover, even if we were to address these issues, they would not resolve the appeal before us, as the short-term investment appears to have been a security. See R.C. 1707.01(B).

Alejandro's statements were not made with the purpose of selling securities as misstating corporate assets or profits may be. Rather, Alejandro's statements were, allegedly, made with the intent to induce the Ferrittos to deposit funds with Alejandro so that he could pocket their investment money, or at least a substantial portion of it. Moreover, the Ferrittos do not claim injury herein due to the securities which Alejandro actually purchased for them but only claim injury in regard to those securities which he stated that he had sold to them but did not actually purchase on their behalf. Furthermore, the Ferrittos do not aver that Alejandro made false representations about the securities themselves. Hence, we conclude that the Ferrittos' cause of action lacks redress under the blue sky provisions of R.C. Chapter 1707 because the Ferrittos do not aver that Alejandro ever intended to sell them the securities which are the subject of this appeal; rather, his purpose was not to sell them securities but to gain control over their money. Accordingly, we find the statute of limitations in R.C. 1707.43 inapplicable to the case at bar.

We must next determine what statute of limitations is applicable to the instant cause of action. The cause of action set forth in the Ferrittos' complaint is against Ohio Nation and is an action under the doctrine of *respondeat superior* for the tort committed by Alejandro.[5] "It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment." *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1244. Accordingly, we must determine what statute of limitations is applicable to the tort allegedly committed by Alejandro. As noted above, the Ferrittos aver that Alejandro committed fraud by stating that he was purchasing securities for the Ferrittos while he was actually pocketing the Ferrittos' investment. The elements of fraud are "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus.

The statute of limitations applicable to a fraud claim is set forth in R.C. 2305.09(C). *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206, 210–211. "[B]y the express terms of R.C. 2305.09(D), the four-year

---

**5.** We do not reach whether Alejandro was working within the scope of his employment at the time these torts were committed.

limitations period does not commence to run on claims presented in fraud or conversion until the complainants have discovered, or should have discovered, the claimed matters." *Id.* at paragraph 2b of the syllabus. Upon review of the record, we conclude that material facts remain in dispute as to when the Ferrittos discovered or should have discovered Alejandro's fraudulent activity. Accordingly, the Ferrittos' first two assignments of error are sustained to the extent that they aver that the trial court erred in entering summary judgment against them based on the statute of limitations contained in R.C. 1707.43 and are, in remaining part, rendered moot as to the Ferrittos' claims against Ohio National because we find R.C. Chapter 1707 inapplicable. The Ferrittos' averments of error in regard to the trial court's entry of summary judgment in favor of Guardian Life Insurance Company and Guardian Insurance and Annuity Company Incorporated are, as we held in our journal entry of February 15, 2000, not properly before us, as they are not based on a final, appealable order. Accordingly, we do not pass upon them.

## B

### Third Assignment of Error

"The trial court committed prejudicial error as a matter of a [*sic*] law in granting summary judgment in favor of Ohio National on plaintiffs' claims that its agent had actual or apparent authority to recommend and handle the car wash investment as part of the financial plan designed for these policyholders."

The Ferrittos aver that the trial court erred in entering summary judgment against them in regard to their claims regarding an investment in a car wash that Alejandro placed for them. They aver that Alejandro possessed apparent authority to act on Ohio National's behalf in placing the car wash investment. Hence, they aver that Ohio National is liable for Alejandro's malfeasance and/or fraudulent conduct in regard to this investment. As we find that we lack jurisdiction over this claim, we do not reach the merits of this assignment of error.

In an entry journalized on February 15, 2000, this court held that "the only final appealable order in this matter is the trial court's third order granting summary judgment to Ohio National on the *respondeat superior* and the negligent hire claims." The trial court's third entry granting summary judgment did not address the Ferrittos' claims regarding the car wash investment or the issue of apparent authority. Accordingly, no final appealable order exists on these claims and we lack jurisdiction to address them.

### III

Appellants' first and second assignments of error are sustained to the extent that they assert that the trial court erred in granting summary judgment based upon the statute of limitations contained in R.C. 1707.43 in favor of Ohio National and are, in remaining part, rendered moot by this determination or are not final and appealable. Further, appellants' third assignment of error is not based upon a final, appealable order and we lack jurisdiction to address it.

*Judgment reversed,*
*and cause remanded.*

BAIRD and SLABY, JJ., concur.