**Alvin PHELPS, et al., Plaintiffs,**

**v.**

**David LENGYEL, et al., Defendants.**

**No. 4:01CV1365.[1]**

United States District Court,
N.D. Ohio,
Eastern Division.

July 18, 2002.

1. On July 5, 2001, the Court consolidated *Alvin Phelps, et al. v. David Lengyel,* Case No. 4:01CV1365 (Plaintiffs' suit against electrical subcontractor who installed wiring in their

residence), and *Alvin Phelps, et al. v. Jerry Jones dba J & J Construction, et al.,* Case No. 4:01CV1366(Plaintiffs' suit against general contractor who constructed their residence).

*See* ECF Dkt. # 15. From that point forward, all documents for these cases were to be filed under the lower case number, 4:01CV1365. *See id.* Further, the Court ordered that all matters were to be referred to the under-signed for general pre-trial supervision, in-cluding *all* motions. *See id.*(emphasis added).

Rosemary Phelps, Salineville, OH, pro se.

Matthew R. Planey, John C. Pfau, Pfau, Pfau & Marando, Youngstown, OH, for David Lengyel, John Lengyel, Jerry Jones.

Andre Prassinos, Nationwide Mut. Ins., Canfield, OH, Gina DeGenova–Bricker, Harrington, Hoppe & Mitchell, Ltd., William L. Hawley, Harrington, Hoppe & Mitchell, Ltd., Warren, OH, for Nationwide Ins.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon Defendants' Jerry Jones, dba J & J Construction, and John Lengyel, dba J & J Construction ("Defendants") motion for partial summary judgment. (Dkt.# 64).

On June 27, 2001, this Court issued an order referring this case to Magistrate Judge George J. Limbert for a report and recommendation ("R & R") (Dkt.# 11). In the instant case, Plaintiffs filed an amended complaint against Defendants alleging (1) negligence; (2) willful, wanton, and recklessness; (3) misrepresentation; (4) breach of contract; (5) breach of warranty; and (6) emotional distress. (Dkt.# 25).

On December 19, 2001, Defendants filed a motion for partial summary judgment as to three of the six claims brought against them in this case. (Dkt.# 64). Specifically, Defendants claim that they are entitled to summary judgment on the claims alleging willful, wanton, and recklessness; misrepresentation; and breach of warranty. (Id.).

On June 18, 2002, Magistrate Judge Limbert issued a report and recommendation making the following recommendations:

(1) Defendants' motion for partial summary judgment on Plaintiffs' willful, wanton, and recklessness claim be denied;

(2) Defendants' motion for partial summary judgment on Plaintiffs' misrepresentation claim be denied in whole; and

(3) Defendants' motion for partial summary judgment on Plaintiffs' breach of warranty claim be granted in part and denied in part. Magistrate Judge Limbert

found that this claim actually consists of three separate imbedded warranty claims. (R & R at 17). First, the Plaintiffs' first imbedded warranty claim of breach of the express warranty of "workmanlike manner" is not properly plead and brought as a separate breach of warranty claim, and thus should be deemed incorporated within Plaintiffs' breach of contract cause of action in Count Four of the amended complaint. (Id. at 21). Second, that Plaintiffs' second imbedded warranty claim implicating UCC Article Two warranty remedies be dismissed as a matter of law. (Id.). And thirdly, that Plaintiffs' third imbedded warranty claim for breach of an oral express one year warranty not be dismissed due to Defendants' failure to brief this legal claim for relief. (Id.).

FED. R. CIV.P. 72(b) provides that objections to a report and recommendation must be filed within ten (10) days after service, but Plaintiffs and Defendants have failed to timely file any such objections. Therefore, the Court must assume that both parties are satisfied with the Magistrate Judge's recommendation. Any further review by this Court would be duplicative and an inefficient use of the Court's limited resources. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), *aff'd*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Therefore, Magistrate Judge George J. Limbert's report and recommendation is hereby **ADOPTED** and Defendant's motion for partial summary judgment is **DENIED** in part and **GRANTED** in part.

**IT IS SO ORDERED.**

2. From this point forward, the undersigned refers to the Plaintiffs Alvin and Rosemary

*REPORT AND RECOMMENDATION ON DEFENDANTS JERRY JONES, DBA J & J CONSTRUCTION AND JOHN LENGYEL, DBA J & J CONSTRUCTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

LIMBERT, United States Magistrate Judge.

Defendants Jerry Jones, dba J & J Construction, and John Lengyel, dba J & J Construction, move this Court for an order pursuant to Rule 56 of the Federal Civil Rules of Procedure granting them partial summary judgment as to three of the six causes of action brought against them in the instant consolidated action. *See* ECF Dkt. # 64. Defendants Jerry Jones and John Lengyel argue that no genuine issues of material fact exist regarding Plaintiffs Alvin and Rosemary Phelps' ability to recover on their causes of action for willful, wanton, recklessness, misrepresentation, and breach of warranty. *See id.* Defendants Jerry Jones and John Lengyel further aver that they are entitled to judgement as a matter of law on these three specified claims. *See id.*

For the following reasons, the undersigned recommends that Defendants' motion for partial summary judgment on Plaintiffs' willful, wanton, recklessness and misrepresentation causes of action be DENIED, and Defendants' motion for partial summary judgment on Plaintiffs' breach of warranty cause of action be GRANTED in part and DENIED in part. *See* ECF Dkt. # 64.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 1996, Plaintiffs Alvin and Rosemary Phelps [2], as landowners, entered

Phelps collectively as Plaintiffs.

into a contract with Defendant J & J Construction, a general contractor, to construct a single family residence. *See* ECF Dkt. # 64 at 3, *and* exhibit A. Defendant J & J Construction is a sole proprietorship owned by Defendant Jerry Jones. *See id.* At the time of contract formation in October 1996 with Plaintiffs, Defendant Jerry Jones considered himself partners with Defendant John Lengyel. *See id.*[3]

Construction on Plaintiffs' residence began in October, 1996. *See* ECF Dkt. # 64 at 3. During the course of construction, numerous disputes arose between Plaintiffs and Defendants involving the construction of the residence. *See id.* These disputes constitute the causes of action set forth in Plaintiffs' amended complaint filed against Defendants in the instant consolidated case. *See id.*

On March 19, 1999, Plaintiffs filed a lawsuit against Defendants in the Columbiana County Court of Common Pleas. *See* ECF Dkt. # 64 at 3, *and* exhibit B. In this original state lawsuit, Plaintiffs made numerous averments to support breach of contract, negligence, and breach of warranty causes of action. *See id.* Defendants filed an answer denying Plaintiffs' allegations and asserting their own counterclaim against Plaintiffs seeking monetary damages for monies owed resulting from the construction of Plaintiffs' residence. *See id.*

On October 18, 1999, Plaintiffs filed an amended complaint in the state case asserting identical causes of action as set forth in the original complaint against Defendants, but also named a new party, David Lengyel, dba J & J Construction, as a defendant. *See* ECF Dkt. # 64 at 4. Defendants again denied Plaintiffs' allegations and filed a counterclaim against Plaintiffs. *See id.*

While their original state lawsuit against Defendants was still pending in the Columbiana County Court of Common Pleas, Plaintiffs filed a subsequent state lawsuit against the same moving Defendants in the same court on May 30, 2001. *See* ECF Dkt. # 64 at 4, exhibit C. In their subsequent state lawsuit, Plaintiffs asserted causes of action sounding in negligence, willful, wanton, recklessness, misrepresentation, and severe emotional distress and trauma against Defendants. *See id.* Defendants aver that Plaintiffs' motivation for filing the subsequent state lawsuit was due to their disagreement with certain rulings made by the trial judge in the original state lawsuit. *See id.*

On June 6, 2001, one week after filing their subsequent state lawsuit, Plaintiffs filed the instant action in U.S. District Court against Defendants asserting causes of action sounding in negligence, willful, wanton, recklessness, misrepresentation, and severe emotional distress and trauma. *See* ECF Dkt. # 1 (Case No. 4:01CV1366). Similarly, Defendants aver that Plaintiffs filed the instant action because of their frustration with the status of their original state lawsuit. *See* ECF Dkt. # 64 at 4.

Shortly after filing the instant action, Plaintiffs filed pleadings in the state court actions to either join the matters pending in state court with the instant action or transfer the matters pending in state court to the U.S. District Court. *See* ECF Dkt. # 64 at 4. As a result, the judge presiding over the state court actions dismissed the state court actions *without prejudice* by entry dated June 19, 2001. *See id.* Thereafter, in the instant action, Plaintiffs filed an amended complaint against Defendants. *See* ECF Dkt. # 25. In their amended complaint, Plaintiffs asserted causes of action sounding in negligence,

---

**3.** From this point forward, the undersigned refers to Defendants J & J Construction, Jerry Jones, and John Lengyel collectively as Defendants.

willful, wanton, recklessness, misrepresentation, breach of contract, breach of warranty, and emotional distress against Defendants. *See id.*

Defendants now move this Court for an order pursuant to Rule 56 of Federal Rules of Civil Procedure granting them partial summary judgment on Plaintiffs' willful, wanton, recklessness, misrepresentation, and breach of warranty causes of action. *See* ECF Dkt. # 64 at 5. Defendants aver in their motion that all of Plaintiffs' allegations set forth within their willful, wanton, recklessness claim and misrepresentation causes of action are subject to dismissal as untimely. *See id.* Further, Defendants contend that Plaintiffs' breach of warranty cause of action pertains to UCC remedies, and is thus precluded as a matter of law. *See id.*

## II. STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the Court. *See Allen v. Wood,* 970 F.Supp. 824, 828 (E.D.Wash.1997). Similarly, the function of summary judgment is to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *See Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982).

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *See Allen,* 970 F.Supp. at 828(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED. R. CIV. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249, 106

S.Ct. 2505. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## III. ANALYSIS

### A. Willful, Wanton, and Recklessness

■ In Count Two of their amended complaint, Plaintiffs set forth a cause of action against Defendants supported by allegations of willful, wanton and reckless misconduct arising out of the construction of Plaintiffs' residence. *See* ECF Dkt. # 25 at p. 5–6. More specifically, after completing the residence's foundation in February 1997, Plaintiffs allege that Defendants became aware of an error in the foundation size of the residence, *i.e.* that it was too small and not built to the specification provided for in the residence's blueprints. *See id.* Plaintiffs contend that when Randy Petri (Petri) of Stark Truss Company came and measured the foundation, in anticipation of installing the residence's truss system, he noticed the foundation size was not to specification. *See*

*id.* Plaintiffs further aver that upon noticing the flawed foundation, Petri contemporaneously informed Defendants that the foundation was not built in accordance with the specifications provided for by the residence's blueprints. *See id.*

In spite of this knowledge, Plaintiffs aver that Defendants continued to build the residence contrary to spec throughout the remaining months of 1997, with conscious disregard for the safety of Plaintiffs and the personal effect it would have on them. *See* ECF Dkt. # 25 at p. 5–6. Generally, Plaintiffs allege that Defendants' actions have caused them severe emotional trauma. *See id.* More specifically, Plaintiffs allege that Defendants, for example, knew that Plaintiff Rosemary Phelps required the size of the doorways to be wheelchair accessible, but they nevertheless recklessly and intentionally built the residence on a smaller foundation than called for by the residence's blueprints. *See id.*

Defendants urge this Court to dismiss Plaintiff's recklessness claim as untimely. *See* ECF Dkt. # 64 at 6. Defendants contend that tort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in Ohio Revised Code R.C. § 2305.09(D). *See* ECF Dkt. # 72 at 4 (citing *Harris v. Liston,* 86 Ohio St.3d 203, 207, 714 N.E.2d 377, 380).[4] In *Harris,* the Ohio Supreme

---

4. The undersigned is mindful that however unartfully drafted, pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. *See Laremont–Lopez v. Southeastern Tidewater Opportunity Center,* 968 F.Supp. 1075, 1078 (E.D.Va.1997) (citations omitted). Guided by this standard, the undersigned assumes for purposes of this Report and Recommendation that Plaintiffs' recklessness cause of action in Count Two of the amended complaint is a tort action for injury and damage to real property. *See* ECF Dkt. # 25 at p. 5–6. Plaintiffs make averments in their recklessness cause of action that include claims for emotional damage

caused by Defendants' alleged reckless and intentional conduct of building their residence in contravention to spec. *See id.* The undersigned takes note that Plaintiffs make almost the identical averments in their emotional distress cause of action in Count Six of the amended complaint. *See id.* at p. 10–11. Defendants have not moved for summary judgment on Plaintiffs' emotional distress cause of action. *See* ECF Dkt. # 64. Thus, in order to construe Plaintiffs' recklessness and emotional distress causes of action as non-duplicative claims, the undersigned assumes that Plaintiffs' recklessness cause of action is

Court stated that the statute of limitations begins to run or accrues when the damage to the property is first discovered, or when through the exercise of reasonable diligence the damage should have been discovered. *See Harris, supra.* Defendants rely upon the affidavit and deposition testimony of Plaintiff Rosemary Phelps to assert that she became aware of some kind of problem with the foundation as early as February or March 1997. *See* ECF Dkt. # 74 at 5. Defendants argue that Plaintiffs' recklessness cause of action thus began to accrue at that point in time, and hence became untimely, more than four years later in March, 2001. *See id.* Because Plaintiffs did not bring their recklessness claim until May 30, 2001, Defendants argue that Plaintiffs' recklessness cause of action violates the statute of limitations and should be dismissed as a matter of law. *See* ECF Dkt. # 64 at 4, exhibit C, *and* ECF Dkt. # 72 at 6.

■ Defendants, however, ignore the case law holding that under certain circumstances Ohio law recognizes that the concealment of a cause of action can toll the statute of limitations. *See Baldridge v. Toombs,* 189 N.E.2d 177, 180 (Ohio Com.Pl.Scioto County 1962). In order for concealment to toll the statute of limitations, courts have generally held that there must be something of an affirmative character designed to prevent, and which does prevent, discovery of the cause of action; or some actual artifice to prevent knowledge of the fact; or some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry. *See id.* More recent case law in Ohio has reaffirmed the legal proposition that the statute of limitations may be tolled where there is some conduct of the adverse party, such as a misrepresentation, which excludes suspicion and prevents inquiry. *See Bryant v. Doe,* 50 Ohio App.3d 19, 22, 552 N.E.2d 671, 675 (Montgomery 1988)(citing *Baldridge, supra* ).[5] The undersigned recognizes that the question of fraudulent concealment of a cause of action, so as to toll a statute of limitations, is usually a question of fact that is not suited for summary judgment. *See Adams v. Wolf,* 73 Ark.App. 347, 43 S.W.3d 757 (Ark.App. 2001)

In her affidavit, Plaintiff Rosemary Phelps attested that when she inquired in February 1997 whether the width of the residence's foundation was correct, Defendant John Lengyel laughed at her and told her that, "[t]here was nothing wrong with the foundation." ECF Dkt. # 69, exhibit A. Plaintiffs allege that at this time, Defendants knew that they had built the foundation too small because Petri had already expressed his concerns regarding the foundation to Defendants prior to constructing the trusses for the residence. *See* ECF Dkt. # 69, exhibit C(Petri's affidavit). In his affidavit, Petri attests that when he raised his concerns to Defendants, they simply stated that Plaintiffs knew the foundation was not to spec. *See id.* In March 1997, Plaintiff Rosemary Phelps attested that Defendants admitted there was a "problem" with the residence, but blamed any problem on the blueprints provided by Plaintiffs, and further told Plaintiffs that they were simply building the home in accordance with the provided plans. ECF Dkt. # 69, exhibit A. Lastly, after filing her original state lawsuit,

---

an action for damage to property, as opposed to damage strictly to Plaintiffs' emotional well-being.

**5.** Further, the Sixth Circuit has recently concluded that while concealment by mere silence is insufficient to establish fraudulent concealment and bar a defendant from asserting statute of limitations as a defense, some trick or contrivance intended to exclude suspicion and prevent inquiry can suffice. *See Browning v. Levy,* 283 F.3d 761, 770 (6th Cir.2002).

Plaintiff Rosemary Phelps attested that she had Robert Marchak (Marchak), a draftsman, review the blueprints to their residence in October 1999. *See id.* In his affidavit, Marchak attested that the residence's blueprints were not erroneous, but rather he believed that Defendants simply built a foundation smaller than called for by the blueprints. *See* ECF Dkt. # 69, exhibit D.

Based upon Plaintiff Rosemary Phelps' testimony, the undersigned concludes that there are genuine issues of material fact, as to whether Defendants concealed Plaintiffs' averred recklessness cause of action thereby tolling the applicable statute of limitations. *See* ECF Dkt. # 69, exhibit A. Plaintiff Rosemary Phelps has come forth with sufficient evidence that Defendants misled her and concealed the true nature of the problem with the residence for purposes of Defendants' attempt to garner summary judgement on statute of limitations grounds. *See id.* The undersigned notes that while Plaintiffs may be charged with knowing that their residence's blueprints were possibly erroneous, knowledge that Defendants were building their residence in contravention to specifications cannot be reasonably imputed to Plaintiffs at this stage of the litigation. Based upon the preceding analysis, the undersigned recommends that Defendants' motion for partial summary judgment on Plaintiffs' recklessness claim be DENIED because Defendants have not established as a matter of law that Plaintiffs' recklessness is untimely due to the alleged concealment of the cause of action and its potential tolling effect upon the applicable statute of limitations. *See* ECF Dkt. # 64.

## B. Misrepresentation

In Count Three of their amended complaint, Plaintiffs bring a misrepresentation or fraud cause of action against Defendants. *See* ECF Dkt. # 25 at p. 7–8. After careful inspection of this cause of action, it is evident to the undersigned that there actually exists three imbedded fraud claims within this cause of action, and they will be examined *seriatim.*[6]

### 1. Misrepresenting Cause of Residence's Construction Problems

In Plaintiffs' first identifiable fraud claim they assert that Defendants mislead them and concealed the true nature of the problem with the residence some time between February and March 1997. *See* ECF Dkt. # 69, exhibit A. During this time period, Defendants allegedly told Plaintiffs initially that there was no problem with the foundation, and then subsequently that any problem with the residence lied with the blueprints. *See id.* Specifically, Defendants allegedly told Plaintiffs that they were building the residence to spec, and that any problems with the residence rested with the blueprints. *See id.* On the other hand, Defendants allegedly told subcontractors, like Petri, to continue with their plans for the Plaintiffs' residence because Plaintiffs were aware that the foundation was not built to spec. *See id.*[7]

---

6. In the first paragraph of their fraud cause of action, Plaintiffs aver that Defendants guaranteed the work performed on their residence for one year, but subsequently failed to honor the guarantee. *See* ECF Dkt. # 25 at p. 7. This allegation is more appropriately classified as a breach of warranty claim, and is examined in subsection C, *see infra,* where the undersigned conducts an analysis of Plaintiffs' overall breach of warranty cause of action.

7. Defendants point out that Plaintiffs cannot sustain a fraud action exclusively on Defendants' alleged misrepresentation to Petri. *See* ECF Dkt. # 64 at 11. However, Defendants do not argue that Plaintiffs cannot utilize this evidence to buttress their first identifiable fraud claim. *See id.*

Defendants seek to eliminate Plaintiffs' first identifiable fraud claim prior to trial. *See* ECF Dkt. # 64, 72. Defendants argue that Plaintiffs' first identifiable fraud claim is untimely, and thus should be dismissed as a matter of law. *See id.* Defendants rely upon Plaintiff Rosemary Phelps' testimony that she thought some of the rooms were too narrow, once the foundation had been built in early 1997, and that she expressed these concerns to Defendants in March 1997. *See* ECF Dkt. # 64 at 9. Defendants argue that because Plaintiff Rosemary Phelps knew of an error in the foundation size by at least March 1997, any fraud claim fashioned on these set of facts began to accrue at that point in time. *See id.* Given that a claim based on fraud must be brought within four years after the cause of action accrues[8], Defendants contend that Plaintiffs' fraud claim became untimely in March, 2001. *See id.* Thus, because Plaintiffs did not file this fraud claim until May 30, 2001, *see supra*, Defendants request this Court to dismiss it as untimely. *See id.*

The undersigned recognizes that the statute of limitations applicable to a fraud claim is set forth in R.C. § 2305.09(C). *See Ferritto v. Alejandro,* 139 Ohio App.3d 363, 369–370, 743 N.E.2d 978, 983 (Summit 2000) (citation omitted). "By the express terms of R.C. § 2305.09(D), the four-year limitations period does not commence to run on claims presented in fraud or conversion *until the complainants have discovered, or should have discovered, the claimed matters.*" *Id.*(quotation omitted)(emphasis added).

■■■ The application of a statute of limitations presents a mixed question of law and fact. *See Cyrus v. Henes,* 89 Ohio App.3d 172, 175, 623 N.E.2d 1256, 1258 (Lorain 1993)(citing 51 American Jurispru-

dence 2d 943, Limitation of Actions, § 488 (1970)), *rev'd on other grounds by Cyrus v. Henes,* 70 Ohio St.3d 640, 640 N.E.2d 810 (1994). Determination of when a plaintiff's cause of action accrues is to be decided by the factfinder. *See id.* Generally, the question of when a party discovered fraudulent conduct or when she should have discovered it is a factual inquiry. *See Roger v. Lehman Bros. Kuhn Loeb, Inc.,* 604 F.Supp. 222, 226 (S.D.Ohio 1984). The question of discovery of fraud is a question of fact. *Perry County v. Railroad Co.,* 43 Ohio St. 451, 456, 2 N.E. 854, 859 (1885). Before proceeding, the undersigned notes that in order for Plaintiffs' first identifiable claim to be untimely, the Court must find that Plaintiffs discovered or should have discovered the alleged instant fraud before May 30, 1997, four years prior to Plaintiffs' fraud claim filing on May 30, 2001. *See Ferritto, supra.* Upon review of the record and applying it to the accrual standard, the undersigned finds that material facts remain in dispute as to when the Plaintiffs discovered or should have discovered their first identifiable fraud claim. *See* ECF Dkt. # 25 at p. 7.

Defendants emphasize that any alleged fraud occurred in February or March, 1997, and aver that Plaintiffs knew that there was an error in the foundation size during the same time period. *See* ECF Dkt. # 72 at 6. Therefore, Defendants aver that any fraud claim subsequently brought on these set of facts would become untimely by March 2001. *See id.* Defendants, however, disregard the accrual standard which mandates that the statute of limitations does not commence on fraud claims until the Plaintiffs have discovered, or should have discovered, the claimed matters. *See Ferritto, supra.*

---

**8.** *See Gullatte v. Rion,* 145 Ohio App.3d 620, 625, 763 N.E.2d 1215, 1219 (Montgomery 2000)(citing R.C. § 2305.09(C)).

The undersigned finds that Plaintiffs have set forth sufficient evidence to raise a genuine issue of material fact as to whether they discovered or should have discovered the Defendants' alleged misrepresentations regarding the cause of the residence's construction problems. First, Plaintiffs aver that they actually discovered in October 1999 that Defendants had not built their home according to the specifications provided for in the blueprints, in spite of Defendants representations to the contrary. *See* ECF Dkt. # 69, exhibit A(Plaintiff Rosemary Phelps attests to review of blueprints with draftsman Marchak in October 1999). Second, Plaintiffs stated they had a suspicion, not knowledge, that something was amiss with the sizes of the rooms of the residence near the inception of the construction of their residence in February or March 1997, and that they relayed these suspicions to Defendants at that time. *See id.* However, in response to their suspicions, Plaintiffs aver that Defendants allegedly scoffed at them, and then later attributed any problems with the construction to Plaintiffs' blueprints. *See id.* Plaintiffs further aver that Defendants maintained to Plaintiffs throughout the construction phase of the residence that Defendants were indeed following the blueprint specifications, while contemporaneously representing to a presumed subcontractor, Petri, that Plaintiffs knew that their home was not being constructed to spec. *See id.*

Conversely, the undersigned finds that Defendants have not put forth sufficient evidence to establish that Plaintiffs had or should have discovered the alleged instant fraud, as a matter of law by May 1997, four years before Plaintiffs filed this particular fraud claim. *See* ECF Dkt. # 25 at p. 7. Specifically, Defendants provide no details as to the construction progress of the home. *See* ECF Dkt. # 64, 72. While the foundation of the home was completed some time in early 1997, the construction of the home was not even completed by early 1998, when Plaintiffs could have more clearly ascertained whether Defendants were building their home to spec. *See* ECF Dkt. # 25. Because Defendants have failed to establish as a matter of law that Plaintiffs had or should have discovered the alleged instant fraud as a matter of law by May 1997, four years before Plaintiffs' filed this claim, the undersigned finds that Defendants' argument that Plaintiffs first identifiable fraud claim is untimely lacks merit. *See* ECF Dkt. 64 at 9.

### 2. Misrepresenting Intention to Reimburse Plaintiffs

█ Imbedded within their misrepresentation or fraud cause of action, Plaintiffs bring a second identifiable fraud claim. *See* ECF Dkt. # 25 at p. 7. Plaintiffs allege that they purchased the lighting, dishwasher, shower door, towel racks and other sundry items for their residence with their own funds. *See id.* Continuing, Plaintiffs aver that Defendants withdrew monies from Plaintiffs' construction loan account to, *inter alia,* purchase these aforementioned items. *See id.* Plaintiffs aver that they notified Defendants of these construction item purchases, and Defendants agreed to reimburse Plaintiffs from the construction loan proceeds, but never did. *See id.*

Defendants counter that these reimbursement representations were made to Plaintiffs at the time of signing the contract in October 1996, and thus any fraud claim on these set of facts began to accrue at the time that the representations were made. *See* ECF Dkt. # 64 at 10. Defendants further aver that because Plaintiffs' second identifiable fraud claim would have become untimely by October 2000, it should be dismissed as violative of the statute of limitations since it was filed on

May 30, 2001. *See* ECF Dkt. # 64 at 4, exhibit C.

Defendants once again neglect to examine the standard of accrual of fraud claims for statute of limitations purposes. *See infra.* The undersigned is reminded that a fraud claim accrues when fraud is, or should have been, discovered. *See Palm Beach Co. v. Dun & Bradstreet, Inc.,* 106 Ohio App.3d 167, 665 N.E.2d 718 (Hamilton 1995). While the alleged misrepresentation may have occurred in October 1996, that fact is immaterial for statute of limitations purposes. *See id.* Ohio law directs the undersigned to focus upon the time period when Plaintiffs actually became aware, or should have become aware of the fraud. *See id.*

The undersigned finds that Plaintiffs have set forth sufficient evidence to raise a genuine issue of material fact as to whether they discovered or should have discovered the Defendants' alleged misrepresentations regarding their intent to reimburse Plaintiffs for certain construction materials. Plaintiffs aver and attest that Defendants worked on their residence up through at least September 1997, and Defendants withdrew that last amount of monies contained within their construction loan account in January 1998. *See* ECF Dkt. # 25 at p. 3, *and* ECF Dkt. # 69, exhibit A. If this allegation is true Plaintiffs could not have known that Defendants would fail to reimburse Plaintiffs for the aforementioned construction items until Defendants had either finished constructing the residence or made their last draw from the construction loan proceeds. *See id.* Given that both of these dates September 1997, and January 1998, are within four years of Plaintiffs' fraud claim filing of May 30, 2001, the undersigned finds that Defendants' contention that Plaintiffs' second identifiable fraud claim is untimely lacks merit. *See* ECF Dkt. # 64 at 10.

### 3. Alteration of Lien Waiver/Absconding with Funds

In their third identifiable fraud claim, Plaintiffs aver that Defendants altered a lien waiver which was subsequently submitted to Pittsburgh National Bank (PNC), enabling Defendants to abscond with the remaining amount of monies housed in Plaintiffs' construction loan account in January 1998. *See* ECF Dkt. # 25 at p. 7. Further, Plaintiffs allege that once Defendants obtained the remaining construction loan proceeds, they bolted and did not finish constructing Plaintiffs' residence. *See id.* at p. 8.

Defendants, on the other hand, state that Plaintiff Rosemary Phelps testified that Defendants submitted the lien waiver to PNC on March 18, 1997. *See* ECF Dkt. # 64 at 11. Defendants conclude that any fraud claim on these set of facts accrued in March 1997, and since Plaintiffs did not file their fraud cause of action until May 30, 2001, Plaintiffs' third identifiable fraud claim must be untimely. *See id.*

The undersigned examined the cited testimony of Plaintiff Rosemary Phelps and has determined that it is confusing at best. *See* ECF Dkt. # 62 at 189. Both Plaintiff Rosemary Phelps and Defense Counsel make reference to the dates of alleged fraud as being March 17, 1997, and March 17, 1998. *See id.* The undersigned cannot be expected to rely on testimony rife with inconsistencies to make a recommendation excluding a claim as a matter of law. *See id.* For this reason alone, the undersigned finds genuine issues of material fact as to when Plaintiffs discovered or should have discovered the Defendants' alleged alteration of the lien waiver and subsequent absconding of funds.

Setting aside the utterly baffling exchange between Defense Counsel and Plaintiff Rosemary Phelps during her deposition, the undersigned takes notice that

the alleged absconding of funds did not take place until January 1998. *See* ECF Dkt. # 25 at p. 3. If this allegation is true, Plaintiffs' third identifiable fraud claim could not have begun to accrue until January 1998, when funds were allegedly improperly taken. *See id.* Based upon the foregoing, the undersigned finds that Defendants' contention that Plaintiffs' third identifiable fraud claim is untimely lacks merit. *See id.*[9] Based upon the foregoing analysis, the undersigned finds no merit to Defendants' contentions that Plaintiffs' three identifiable fraud claims within their omnibus fraud cause of action are untimely as a matter of law. Therefore, the undersigned recommends that Defendants's motion for partial summary judgment of Plaintiffs' fraud cause of action be DENIED. *See* ECF Dkt. # 64.

## C. Breach of Warranty

In Count Five of their amended complaint, Plaintiffs bring a breach of warranty cause of action against Defendants. *See* ECF Dkt. # 25 at p. 10–11. After a careful reading though, Plaintiffs' breach of warranty cause of action, in reality, consists of three separate and distinct claims. *See id.*

### 1. "Workmanlike Manner" Warranty Claim

In their first identifiable warranty claim, Plaintiffs aver that Defendants expressly warranted within the contract that Plaintiffs' residence would be completed, "…in a workmanlike manner." ECF Dkt. # 25, exhibit A at 1. Plaintiffs allege that Defendants breached this warranty by failing to construct their residence in a workmanlike manner, and even neglected to finish constructing their home. *See id.*

Initially, Defendants note that the "workmanlike manner" warranty provision Plaintiffs rely upon is expressly incorporated within the contract between the parties. ECF Dkt. # 25, exhibit A at 1. Defendants argue that because the parties' contract expressly contains the "workmanlike manner" warranty provision, Plaintiffs' claim for breaching this warranty is already incorporated into their breach of contract claim in Count Four of the amended complaint. *See* ECF Dkt. # 72 at 9. Defendants further comment that the common law of implied warranty or duty to construct a home in a workmanlike manner is inapplicable in the instant case because it was expressly provided for in the contract between the parties. *See id.* Thus, Defendants contend that Plaintiffs' assertion that Defendants failed to build the residence in a "workmanlike manner" should not stand alone as a separate breach of warranty claim. *See id.* The undersigned agrees with Defendants' analysis.

Recently, the Ohio Supreme Court has held that where the purchaser and builder-vendor enter into an agreement for the future construction of a residence that con-

---

9. Defendants also argue that Plaintiffs cannot recover on their third identifiable fraud claim because the alleged fraud was committed upon a third party, PNC. *See* ECF Dkt. 64 at 12. Defendants' contention is without merit. First, Plaintiffs are alleging that Defendants absconded with their money by withdrawing it from PNC; this allegation clearly states a case of fraud upon the Plaintiffs because their money was allegedly fraudulently taken. *See* ECF Dkt. # 25 at 3. Further, even if the alleged instant fraud is assumed to have been committed upon PNC, Ohio black letter law provides that fraud committed upon an agent to induce the agent to act on behalf of his principal is fraud upon the principal who may maintain an action for fraud against the perpetrator. *See Brevoort v. International Financial Resources, Inc.*, No. 91AP–1364, 1992 WL 246004, *2 (Franklin Sept. 24, 1992), unpublished (citing *Wells v. Cook*, 16 Ohio St. 67 (1865)). Thus, Ohio law provides that Plaintiffs can assert a fraud action against Defendants if they can establish that PNC is their agent. The undersigned notes Defendant has not argued PNC's agency status.

tains an express provision of constructing the residence in a workmanlike manner, the purchaser's claim for breach of an implied duty to construct the house in a workmanlike manner arises *ex contractu. See Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 230, 754 N.E.2d 785, 788 (2001). The Ohio Supreme Court noted that when the contract governs the warranty of good workmanship, the warranty of good workmanship arises from the contract, and that it can hardly be otherwise. *See id.* at 228–229, 754 N.E.2d at 787. Based upon Ohio law, the undersigned finds that Plaintiffs' claim that Defendants breached the express warranty to build the residence in a "workmanlike manner" is manifestly a breach of contract claim, and thus is more properly incorporated within Plaintiffs' breach of contract cause of action as spelled out in Count Four of the amended complaint. *See* ECF Dkt. # 25 at p. 8–11. Accordingly, the undersigned finds that Plaintiffs' first imbedded warranty claim within their breach of warranty cause of action, *i.e.* that Defendants breached the express warranty to build the residence in a "workmanlike manner", is not properly plead and should not have been brought as a separate breach of warranty claim. *See id.*

### 2. Article 2 UCC Remedies

 In what the undersigned categorizes as Plaintiffs' second imbedded warranty claim within their breach of warranty cause of action, Plaintiffs toss around legal notions such as merchantability, fitness, and intended use in their averments. *See* ECF Dkt. # 25 at p. 10–11. Specifically, Plaintiffs aver that Defendants breached implied warranties of "merchantability" and "fitness" when they constructed their

residence, and the residence was not "fit for use" when completed. *See id.*

Defendants initially note that the implied warranties of merchantability and fitness for particular purpose were created by statute in Ohio and are found within Article Two of the Uniform Commercial Code (UCC). *See* ECF Dkt. # 64 at 13(citing Ohio Revised Code §§ 1302.27 and 1302.28, respectively). Defendants aver that Article Two of the UCC only applies to transactions involving the "sale" of "goods." *See id.*(citing R.C. §§ 1302.02).[10] Defendants further remark that Article Two of the UCC is inapplicable to "mixed contracts" when the service aspect predominates over the sales aspect. *See id.* at 14 (quoting *Langhals v. Holt Roofing Co.*, 47 Ohio App.3d 114, 116, 547 N.E.2d 401, 402 (Lucas 1988)). Because the service aspects of constructing Plaintiffs' residence clearly predominate over the sales aspects, Defendants aver that any claim made by Plaintiffs under Article Two of the UCC should be rejected as a matter of law. *See id.*

The undersigned agrees with Defendants that any averments Plaintiffs may have pled that implicate Article Two UCC remedies should be dismissed as a matter of law. *See* ECF Dkt. # 25, p. 10–11. Article Two of the UCC clearly does not apply to the instant case because the center of this controversy revolves around the Defendants' *performance* of the parties' contract calling for Defendants to *construct* Plaintiffs' residence in a workmanlike manner. *See id.*, exhibit A at 1. (emphasis added). The terms of the parties' contract plainly establish that the service aspects of the agreement predominate any sale of goods aspects because Defendants were obligated to built Plaintiffs a 2,600

---

**10.** " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." R.C. § 1302.01(A)(8).

square foot home. *See id.* Based upon the ubiquitous service nature of the parties' contract, the undersigned finds that Plaintiffs' second imbedded warranty claim within their breach of warranty cause of action, which implicates Article Two UCC remedies, should be dismissed as a matter of law. *See id.*

### 3. Oral Express One Year Warranty Claim

In Plaintiffs' third imbedded warranty claim within their breach of warranty cause of action, Plaintiffs allege that "Defendants stated to Plaintiffs up to one year after the construction of said dwelling that they would fix and repair anything that went wrong and needed corrected." *See* ECF Dkt. # 25 at p. 10–11.[11] Plaintiff Rosemary Phelps testified that Defendant(s) stated numerous times that they would guarantee their work on Plaintiffs' residence for one year, both before and during the time of contract execution on October 8, 1996. *See* ECF Dkt. # 62 at 199. Plaintiffs further aver that Defendants breached this warranty by failing to fix and correct needed repairs to their residence during this one year period, once they had moved into the residence. *See* ECF Dkt. # 25 at p. 3.

Defendants fail to brief what the undersigned terms as a breach of an oral express one year warranty claim in either their motion for partial summary judgment or reply brief. *See* ECF Dkt. # 64, and 72. The undersigned reminds Defendants as the party moving for summary judgment that they bear the initial burden of informing the court of the basis for their motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting FED. R. CIV. P. 56(c)). Defendants have not discharged this initial burden, rather they have neglected to inform the Court of any basis for ruling upon Plaintiffs' breach of an oral express one year warranty claim at the summary judgment stage. *See* ECF Dkt. # 64, and 72. Therefore, based upon Defendants failure to argue for the dismissal as a matter of law of Plaintiffs' breach of an oral express one year warranty claim, the undersigned finds that this claim should not be dismissed at this stage of litigation.

Overall, the undersigned recommends the following with regards to the three distinct imbedded warranty claims within Plaintiffs' omnibus breach of warranty cause of action. *See* ECF Dkt. # 25 at p. 10–11. First, the undersigned recommends that Plaintiffs' first imbedded warranty claim of breach of the express warranty of "workmanlike manner" is not properly plead and brought as a separate breach of warranty claim, and thus should be deemed incorporated within Plaintiffs' breach of contract cause of action in Count Four of the amended complaint. *See id.* Second, the undersigned recommends that Plaintiffs' second imbedded warranty claim implicating UCC Article Two warranty remedies be dismissed as a matter of law. *See id.* And thirdly, the undersigned recommends that Plaintiffs' third imbedded warranty claim for breach of an oral express one year warranty not be dismissed due to Defendants' failure to brief this legal claim for relief. *See id.* Therefore, in sum, the undersigned recommends that Defendants' motion for partial summary

---

**11.** Plaintiffs make a similar averment in their misrepresentation claim that, "[D]efendants misrepresented to the Plaintiffs as there being a one year guarantee to the house after completed." ECF Dkt. # 25 at p. 7.

judgment on Plaintiffs' breach of warranty cause of action be GRANTED, in part, and DENIED, in part. *See* ECF Dkt. # 64.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' motion for partial summary judgment on Plaintiffs' willful, wanton, recklessness cause of action be DENIED. *See* ECF Dkt. # 64. The undersigned also recommends that Defendants' motion for partial summary judgment on Plaintiffs' fraud cause of action be DENIED in whole. *See id.*

Lastly, the undersigned recommends that Defendants' motion for partial summary judgment on Plaintiffs' breach of warranty cause of action be GRANTED in part and DENIED in part. *See* ECF Dkt. # 64. Plaintiffs breach of warranty cause of action consists of three claims. *See* ECF Dkt. # 25 at p. 10–11. First, he undersigned recommends that Plaintiffs' first imbedded warranty claim of breach of the express warranty of "workmanlike manner" is not properly plead and brought as a separate breach of warranty claim, and thus should be deemed incorporated within Plaintiffs' breach of contract cause of action in Count Four of the amended complaint. *See id.* Second, the undersigned recommends that Plaintiffs' second imbedded warranty claim implicating UCC Article Two warranty remedies be dismissed as a matter of law. *See id.* And thirdly, the undersigned recommends that Plaintiffs' third imbedded warranty claim for breach of an oral express one year warranty not be dismissed due to Defendants' failure to brief this legal claim for relief. *See id.*

June 18, 2002.