**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0494n.06

**No. 11-3096**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*May 14, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| NYE CAPITAL APPRECIATION PARTNERS, L.L.C., *et al.*, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| JACKIE NEMCHIK, *et al.*, | ) ) | |
| Defendants-Appellees. | ) | |

Before: MOORE, GIBBONS, and ALARCÓN, Circuit Judges.[*]

ALARCÓN, Circuit Judge. Appellants J. Randall Nye ("Randy Nye"), John B. Nye, Eric A. Nye, Nye Capital Appreciation Partners, L.L.C., and Nye Financial Group, Inc. (collectively, the "Nyes") appeal from the district court's order granting summary judgment in favor of Appellees Roy Malkin, Jackie Nemchik, James A. Johnson, and Carol Johnson (collectively, "Appellees"). The district court granted Appellees' motions for summary judgment as to eight of the nine counts in the complaint on the grounds that the claims were inextricably intertwined with the sale of securities and

---

[*]The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

were filed after the expiration of the applicable statutes of limitations. The district court also *sua sponte* dismissed the remaining claim for failure to prosecute. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. For the reasons that follow, we affirm.

I.

In the mid-1990s, the Nyes began making equity investments in ProPaint Plus Automobile Repairs, Systems & Services, Inc. ("ProPaint"), a company founded by James Johnson and Jackie Nemchik. Between December 1996 and January 1997, Nemchik hired Roy Malkin as ProPaint's Chief Operating Officer and President. In May 1997, Randy Nye became a member of ProPaint's Board of Directors.

After Malkin was hired, ProPaint determined it needed capital to make the company viable and to continue business operations. Malkin, Joseph Carney, a member of ProPaint's Board of Directors, and other members of the Board of Directors prepared a Private Placement Memorandum ("PPM") in order to produce new investors. The PPM failed to produce new investors by March 1998, so the Nyes offered to provide an $800,000 capital infusion to ProPaint in exchange for forty percent of ProPaint's total stock in a form substantially the same as that being offered through the PPM. Pursuant to this agreement, the Nyes agreed to sell shares in Nye Capital Appreciation, L.L.C.

("Nye Capital"), an entity the Nyes created to gather investors to make equity investments in ProPaint, and use the capital raised to invest in ProPaint. ProPaint agreed to repay the Nyes $800,000 and use the remaining capital for business activities. Between March and October 1998, the Nyes, in the name of Nye Financial Group, Inc. ("Nye Financial"), transferred a $607,000 "loan" to ProPaint. In October 1998, the Nyes raised $223,000 through Nye Capital and invested it in shares of ProPaint stock.

ProPaint continued to suffer losses through the fall of 1998. On November 15, 1998, Malkin submitted his resignation. On December 4, 1998, Randy Nye became ProPaint's Chairman and Senior Executive and became more involved in the day-to-day operations of ProPaint. Through his involvement, Randy Nye became aware of alleged misconduct by Malkin. On March 15, 1999, the Nyes wrote a memorandum to the Nye Capital investors stating that "sufficient information has been gleaned . . . to infer that the information provided by management (including Mr. Malkin) to prospective investors was either misleading or omitted information that was required to be disclosed." ProPaint ceased operations and filed for bankruptcy on April 26, 1999.

The Nyes filed a complaint in the Cuyahoga County Court of Common Pleas, Ohio, on February 21, 2002, in which they asserted various claims arising out of alleged fraudulent misrepresentations that led to the loss of the money they provided ProPaint. On June 5, 2002, the

Nyes dismissed the action without prejudice pursuant to Rule 41(A)(1) of the Ohio Rules of Civil Procedure.[1] Rule 41(A)(1)(a) allows a plaintiff to dismiss an action without prejudice prior to the start of trial. The Nyes filed a second complaint based on the same claims in a state court in Ohio on December 27, 2002, pursuant to Ohio Rev. Code Ann. § 2305.19(A), also referred to as the Ohio savings statute. *Stone v. N. Star Steel Co.*, 786 N.E.2d 508, 512 (Ohio Ct. App. 2003). The savings statute states:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

---

[1]Ohio Civ. R. 41(A)(1) provides as follows:

[A] plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by doing either of the following:
(a) filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant;
(b) filing a stipulation of dismissal signed by all parties who have appeared in the action.
Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court.

Ohio Rev. Code Ann. § 2305.19(A). "The savings statute . . . applies to save a plaintiff's action otherwise barred by the statute of limitations . . . so that controversies are decided upon important substantive questions rather than upon technicalities of procedure." *Stone*, 786 N.E.2d at 512. (citing *Kinney v. Ohio Dept. of Admin. Serv.* (1986), 30 Ohio App. 3d 123, 126). On June 5, 2008, the Nyes moved for a stipulated dismissal pursuant to Rule 41(A)(1)(b), which permits a plaintiff to "fil[e] a stipulation of dismissal signed by all parties who have appeared in the action." The Ohio state court dismissed the case without prejudice on June 9, 2008.

The Nyes filed the underlying action against Appellees in the United States District Court for the Northern District of Ohio on December 3, 2008. They alleged: Breach of Fiduciary Duty (Count 1), Fraud (Count 2), Negligent Misrepresentation (Count 3), Conversion (Count 4), Civil Conspiracy (Count 5), Accounting (Count 6), Violation of State and Federal Securities Law (Count 7), Unjust Enrichment (Count 8), and Fraud (Count 9). The Nyes alleged that these claims stemmed from the loss of over $800,000 that they provided to ProPaint. On February 24, 2009, Nemchik and the Johnsons filed an answer. On June 2, 2009, Malkin filed an answer asserting that "Plaintiffs are barred from recovering on all of the Counts contained in the Complaint due to the operation of the applicable statute of limitations, statutes of repose and/or by laches."

On January 8, 2010, Malkin filed a motion for summary judgment to dismiss Counts 1, 2, 3, 5, 6, 7, 8, and 9. Malkin asserted that the Nyes' claims involved the sale of securities and were time-barred. On February 16, 2010, Nemchik and the Johnsons filed a summary judgment motion nearly identical to the one filed by Malkin. On February 26, 2010, the Nyes filed an opposition to the summary judgment motions. They contended that the transfer of $607,000 to ProPaint involved in Counts 1, 2, 3, 5, 6, 8, and 9 constituted a loan, not a purchase or sale of securities. They argued that the claims were not time-barred because they were subject to a longer statute of limitations applicable to common law tort claims.

On September 29, 2010, the district court granted the motions for summary judgment as to Counts 1, 2, 3, 5, 6, 7, 8, and 9 of the complaint on the ground that these claims were intertwined with the sale of securities and were therefore time-barred by the applicable statutes of limitations and repose.

On October 18, 2010, the district court issued an order in which it gave notice to the parties that it intended "to enter summary judgment in favor of the non-movant, Jackie Nemchick, relative to Count four for the reasons detailed in the Memorandum and Opinion issued on September 29, 2010." The parties were given fourteen days to respond to this notice pursuant to 56(f) of the Federal Rules of Civil Procedure. On November 4, 2010, the Nyes filed a response in which they alleged

that there were "no legal or factual distinctions in the analysis of the statute of limitations question with regard to Count 4 than that involved with the other Counts. Therefore, the[y rested] upon their arguments previously submitted." They simultaneously filed a request for an extension of time to respond. The district court granted the motion for an extension of time. On December 27, 2010, the district court issued an order stating that because "no further information ha[d] been filed and no additional extensions ha[d] been requested," it dismissed "the remaining Count, Count 4, . . . without prejudice for lack of prosecution."

The Nyes filed a timely notice of appeal on January 26, 2011, challenging the district court's grant of the motions for summary judgment of their claims.[2]

II.

A.

The Nyes contend that the district court erred in determining that their claims in Counts 1, 2, 3, 5, 6, 8, and 9 are intertwined with the purchase or sale of securities. They argue that their

---

[2]Nemchik did not file a brief in this Court. Despite the fact that Malkin is the only defendant to have filed an answering brief in this appeal, all references to "Appellees" throughout this opinion are intended to include each defendant. *See* Fed. R. App. P. 31(c) (The only effect that the failure to file an answering brief has on a federal appeal is that "[a]n appellee who fails to file a brief will not be heard at oral argument unless the court grants permission.").

$607,000 cash infusion constituted "the mere making of a loan and an issuance of a promissory note." We disagree.

"We review a district court's grant of summary judgment *de novo*." *Brooks v. Am. Broad. Cos.*, 932 F.2d 495, 500 (6th Cir. 1991). A grant of summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and where "the opposing party [fails to] go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). "On summary judgment the inferences to be drawn from the underlying facts contained in [the affidavits, exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

In determining which statute of limitations applies to a claim, "'courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded.'" *Doe v. First United Methodist Church*, 629 N.E.2d 402, 407 (Ohio 1994) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). To determine whether a "note" is a security, this court applies the "family resemblance" test articulated by the United States Supreme Court in *Reves v. Ernst & Young*, 494 U.S. 56 (1990). *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 585

(6th Cir. 2000). Under this test, every note is presumed to be a security, unless it falls into one of

the few enumerated categories. *Reves*, 494 U.S. at 65 (quoting *Exch. Nat'l Bank v. Touche Ross &*

*Co.*, 544 F.2d 1126, 1138 (2d Cir. 1976)).[3] It is undisputed that the $607,000 loan does not fall

within an enumerated category that rebuts the presumption that a note is a security.

If a note does not bear a strong resemblance to one of the enumerated categories, then courts

may still weigh the following four factors to determine whether a note should be added to the list of

categories of non-securities: (1) "the motivations that would prompt a reasonable seller and buyer

to enter into [the transaction]"; (2) "the 'plan of distribution' of the instrument"; (3) "the reasonable

expectations of the investing public"; and, (4) "whether some factor such as the existence of another

regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of

the Securities Acts unnecessary." *Id.* at 66-67. We address each factor in turn.

---

[3]Notes that are *not* presumed to be securities include

> the note delivered in consumer financing, the note secured by a mortgage on a home,
> the short-term note secured by a lien on a small business or some of its assets, the
> note evidencing a "character" loan to a bank customer, short-term notes secured by
> an assignment of accounts receivable, or a note which simply formalizes an
> open-account debt incurred in the ordinary course of business (particularly if, as in
> the case of the customer of a broker, it is collateralized).

*Reves*, 494 U.S. at 65 (quoting *Exch. Nat'l Bank*, 544 F.2d at 1138).

With respect to the first factor, "[i]f the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.'" *Id.* at 66. Appellees sought the cash infusion to enable ProPaint to continue operating its business. The Nyes transferred the money to acquire stock in ProPaint and to generate profit by selling stock to outside investors. Accordingly, the district court did not err in determining that the first factor weighs in favor of characterizing the loan as a security.

In applying the second factor, we look to the record to "determine whether it is an instrument in which there is 'common trading for speculation or investment.'" *Id.* (quoting *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943)). However, even if an instrument is not commonly distributed, "it is clear that paradigmatic securities, such as stocks, can be offered and sold to a single person, while yet remaining securities." *Bass*, 210 F.3d at 585. Here, Appellees used the PPM to generate equity interest from the Nyes. The PPM explicitly stated that "investment in [ProPaint] is speculative . . . and should be considered only by those persons who are able to bear the economic risk . . . and could afford a complete loss of their investment." Despite the absence of common trading for speculation or investment, this solicitation of capital in exchange for stock also weighs in favor of characterizing the Nyes' loans as securities.

The record demonstrates that the third *Reves* factor is also satisfied. The Nyes referred to the $607,000 transfer to ProPaint as a "loan" but expected to receive stock in ProPaint in exchange and to convert their "loan" into an equity investment. Randy Nye wrote to Nemchik stating that the Nyes' $800,000 capital infusion to ProPaint will "[i]nitially . . . take the form of notes . . . [and that in] exchange for this funding the investment partnership or LLC will receive 40% of ProPaint." Carney also stated in a May 14, 1998 letter to Randy Nye and others, that "[i]f ProPaint were flush with funds, we could skip the loan step and proceed directly to the investment." He laid out the steps involved in converting the loans to equity investments and added that "the sooner we get equity issued the better for ProPaint."

We reject the Nyes' assertion that the district court erroneously "relie[d] upon an *interpretation* of the evidence" in determining that the their loan was intended as an equity investment. (Opening Br. 16.) The district court properly reviewed the evidence on the record and "look[ed] to the actual nature or subject matter of the case, rather than to the form in which the action [was] plead[]." *Doe*, 629 N.E.2d at 407. The district court did not err in determining that the *nature* of the transaction was a sale of security and that the investing public would have reasonably perceived it as such.

The final *Reves* factor is also inapplicable because the Nyes' loan in exchange for stock in ProPaint was not collaterized or insured. The PPM warns prospective investors that their investments would be subject to financial risks, indicating the absence of any security measures. Additionally, the Nyes have not disputed Malkin's allegation that "[t]he notes at issue here were not protected by any other regulatory scheme and were uninsured and uncollateralized." Appellee's Br. 24. Absent a risk-reducing factor, the fourth factor supports the characterization of the Nyes' "loans" as securities.

A balance of the four factors identified in *Reves* does not support the creation of a new category of non-securities to encompass the $607,000 loan. The district court did not err in determining that the Nyes' loans were securities and that the Nyes' claims were inextricably intertwined with the sale of securities.

B.

The Nyes contend that the district court erred in applying the two-year statute of limitations set forth in Ohio Revised Code § 1707.43, based on the assumption that the transactions with the Appellees involved a sale of securities. They argue that the district court should have applied Ohio

Revised Code § 2305.09, which provides a four-year statute of limitations for common law tort claims. We disagree.

Based on the reasons discussed above, we are persuaded that the Nyes' claims involved the sale of securities. Accordingly, the district court applied the proper statutes of limitations to the Nyes' claims. Their state securities claims set forth in Counts 1, 2, 3, 5, 6, 8, and 9 are subject to the two-year statute of limitations set forth in Ohio Revised Code § 1707.43(B).[4]

Count 7 of the Nyes' complaint alleges a violation of Section 10(b) of the Securities Exchange Act of 1934. The federal securities cause of action alleged in Count 7 arose prior to the enactment of the Sarbanes-Oxley Act.[5] Accordingly, it was subject to the "1-and-3-year" structure, under which "[l]itigation . . . must be commenced within one year after the discovery of the facts constituting the violation *and* within three years after such violation." *Lampf, Pleva, Lipkind, Prupis*

---

[4]Ohio Revised Code § 1707.43(B) provides as follows:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

[5]The Sarbanes-Oxley Act lengthened the statutes of limitations and repose to "2-and-5-year" periods when it came into effect on July 30, 2002.

-13-

*& Petigrow v. Gilbertson*, 501 U.S. 350, 361, 364 (1991) (emphasis added). "The 3-year limit is a

period of repose . . . ." *Id.* at 363.

The Nyes further contend that the district court erred in determining that they knew or should

have known of the alleged fraud and misrepresentations by Appellees on or before March 15, 1999.

The Nyes argue that, at least as to Appellants other than Randy Nye, "the District Court's *sua sponte*

use of the March 15, 1999 date is not based upon allegations in [Appellees'] Motions for Summary

Judgment, and [the district court] gave [Appellants] no opportunity to respond."

The discovery rule applies to the Nyes' state and federal securities claims. *See* Ohio Rev.

Code Ann. § 1707.43(B) ("No action for . . . any recovery based upon or arising out of a sale or

contract for sale [of securities] shall be brought more than two years after the plaintiff knew, or had

reason to know, of the facts by reason of which the actions of the person or director were unlawful,

or more than five years from the date of such sale or contract for sale, whichever is the shorter

period."); *Lampf*, 501 U.S. at 363 ("The 1-year period, by its terms, begins after discovery of the

facts constituting the violation . . . ."). "Under the discovery rule, an action accrues 'at the time when

the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained

of injury.'" *Metz v. Unizan Bank*, 649 F.3d 492, 498 (6th Cir. 2011) (quoting *Investors REIT One

v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989)). Even if a plaintiff does "'not . . . discover[] all the

-14-

relevant facts necessary to file a claim,' . . . a statute of limitations begins running once [the] plaintiff[ is] deemed to be on 'notice to investigate the facts and circumstances relevant to [his or her] claim in order to pursue [his or her] remedies.'" *Id.* (quoting *Flowers v. Walker*, 589 N.E.2d 1284, 1287, 1288 (Ohio 1992)).

On March 15, 1999, Randy Nye, John Nye, and Eric Nye wrote a memorandum to the investors in Nye Capital, informing them that "sufficient information has been gleaned . . . to infer that the information provided by management (including Mr. Malkin) to prospective investors was either misleading or omitted information that was required to be disclosed." The Nyes' knowledge was properly imputed to Nye Financial and Nye Capital. *See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 688 (6th Cir. 2005) ("[K]nowledge of a corporate officer or agent acting within the scope of [his] authority is attributable to the corporation.") (second alteration in original) (internal quotation marks and citation omitted).

Contrary to the Nyes' contention, the district court did not err in its *sua sponte* consideration of the memorandum dated March 15, 1999, in determining the date the Nyes should have discovered the Appellee's alleged misconduct. The March 15, 1999 memorandum was attached as an exhibit to Malkin's motion for summary judgment. In making its determinations, such as the date on which a party discovered facts supporting its allegations, "[t]he court need consider only the cited materials,

but it *may* consider other materials in the record." Fed. R. Civ. P. 56(c)(3) (emphasis added).

Appellees argued at summary judgment that the discovery date was in December 1998. The Nyes had the opportunity to challenge this assertion, but failed to do so. In their opposition to the motions for summary judgment, the Nyes stated only that, pursuant to the four-year statute of limitations governing common law tort claims under Ohio Rev. Code § 2305.09, their initial complaint in state court was filed within four years of December 1998. The district court did not err in concluding that all Appellants knew or should have known of Appellees' alleged misconduct by March 15, 1999.

Based on the district court's determination that the discovery date was March 15, 1999, the limitations period for the Nyes' state security claims expired on March 15, 2001. Thus their initial complaint, filed on February 21, 2002, in an Ohio state court, was filed one year after the statute of limitations set forth in Ohio Rev. Code § 1707.43(B) had expired.

The statute of limitations for the Nyes' federal security claim expired on March 15, 2000. The statute of repose, which commenced in October 1998 when the Nyes last transferred monies to ProPaint, expired in October 2001. *Lampf*, 501 U.S. at 364. Both periods expired before the Nyes filed the initial action in state court on February 21, 2002, and the underlying action in the federal district court on December 3, 2008. Accordingly, the district court did not err in determining that

the statute of limitations expired as to Counts 1, 2, 3, 5, 6, 7, 8, and 9 prior to the filing of the initial

complaint in the Ohio state court on February 21, 2002.


D.


The Nyes also contend for the first time on appeal that Appellees should be estopped from

raising a violation of the statute of limitations argument because, pursuant to Ohio Civ. R.

41(A)(1)(b), Appellees stipulated to a dismissal without prejudice of the second state court complaint

filed in this matter. *Nye Cap. Appreciation Ptnr., L.L.C., et al. v. Nemchik, et al.*, Case No. CV-02-

489888, (June 5, 2008). Ohio Rev. Code Ann. § 2305.19(A) provides that "if the plaintiff fails

otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after

the date of . . . the plaintiff's failure otherwise than upon the merits or within the period of the

original applicable statute of limitations, whichever occurs later." Section 2305.19(A) does not

apply, however, where an action was not initially filed within the limitations period. *See Mihalcin

v. Hocking Coll.*, No. 99CA32, 2000 WL 303138, at *4 (Ohio Ct. App. Mar. 20, 2000) ("A plaintiff

must satisfy at least two elements to employ the savings statute: (1) commencement of an action

*before* the statute of limitations has expired, and (2) failure otherwise than upon the merits after the

statute of limitations has expired.") (emphasis in original). The second complaint the Nyes filed in

the Ohio state court was filed after the statute of limitations had expired. Accordingly, the Ohio

savings statute expressly precludes the Nyes from reincarnating their expired claims.

III.

The Nyes also appeal the district court's *sua sponte* dismissal of Count 4 for failure to

prosecute. They contend that they complied with the district court's notice and order to address the

claim by filing a response in which they rested on the arguments presented in their opposition to the

motions for summary judgment.

"We apply the abuse-of-discretion standard when reviewing a district court's decision to

dismiss a lawsuit for failure to prosecute." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir.

2005). "A district court abuses its discretion when it relies on clearly erroneous findings of fact,

when it improperly applies the law, or uses an erroneous legal standard." *Stough v. Mayville Cmty.

Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). The reviewing court must be "firmly convinced that a

mistake has been made." *Id.*

"Rule 41(b) of the Federal Rules of Civil Procedure gives courts the authority to dismiss a

case for 'failure of the plaintiff to prosecute or to comply with these rules or any order of the court.'"

*Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 362-63 (6th Cir. 1999) (quoting Fed. R. Civ. P. 41(b));

*see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court

to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be

doubted.").

This court considers four factors when reviewing a district court's dismissal of a case for

failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether
> the adversary was prejudiced by the dismissed party's conduct; (3) whether the
> dismissed party was warned that failure to cooperate could lead to dismissal; and (4)
> whether less drastic sanctions were imposed or considered before dismissal was
> ordered.

*Wu*, 42 F.3d at 643 (quoting *Knoll*, 176 F.3d at 363). The third and fourth factors weigh strongly

in favor of affirming the district court's order dismissing Count 4.

The Nyes were notified by the district court that a failure to supplement their arguments made

on summary judgment to address Count 4 would result in a grant of summary judgment in favor of

Nemchick. They failed to submit any supplemental brief supporting the allegations set forth in

Count 4. On December 27, 2010, the district court dismissed Count 4 without prejudice for failure

to prosecute. "The authority of a federal trial court to dismiss a plaintiff's action *with* prejudice

because of his failure to prosecute cannot seriously be doubted." *Link*, 370 U.S. at 629 (emphasis

added). Because the Nyes' failed to follow the district court's instruction to demonstrate that there were sufficient facts to raise a genuine issue of fact regarding the state law tort alleged in Court 4, the district court did not abuse its discretion in dismissing it for failure to prosecute.

IV.

For the foregoing reasons, we affirm the district court's dismissal of all counts.